**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RONALD MERCIER,<br><br>           Plaintiff,<br><br>      v.<br><br>RESTORBIO, INC., JEFFREY A. CHODAKEWITZ, PAUL FONTEYNE, MICHAEL GRISSINGER, CHEN SCHOR, JONATHAN SILVERSTEIN, DAVID STEINBERG, and LYNNE SULLIVAN,<br><br>           Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1.      This action concerns a proposed transaction announced on April 28, 2020 pursuant to which Adicet Bio, Inc. ("Adicet") stockholders will become the majority owners of resTORbio, Inc.'s ("TORC") outstanding common stock.   Adicet will be merged into Project OasisMerger Sub, Inc. ("Merger Sub"), with Adicet surviving as a wholly-owned subsidiary of TORC ("Proposed Transaction").

2.      On April 28, 2020, the Board of Directors of TORC (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger and reorganization (the "Merger Agreement") in an all-stock deal, pursuant to which each share of Adicet capital stock will be converted into 0.8559 shares of TORC common stock (the "Merger Consideration").  Upon closing of the Proposed Transaction, stockholders of Adicet are expected to

own approximately 75% of the outstanding common stock of TORC, while stockholders of TORC are expected to own approximately 25% of TORC.

3.       On June 23, 2020, in order to convince TORC's unitholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading preliminary S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4.       The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.       In addition, a special meeting of TORC's unitholders will be held to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so TORC unitholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

**JURISDICTION & VENUE**

6.       This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.       This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.  Plaintiff is, and has been continuously throughout all times relevant hereto, a TORC shareholder.

10.  Defendant TORC is a Delaware corporation and a party to the Merger Agreement. TORC shares are traded on the NASDAQ Global Select Market under the ticker symbol "TORC."

11.  Defendant Chen Schor is Chief Executive Officer, Co-Founder, and a director of the Company.

12.  Defendant Jonathan Silverstein is a director of the Company. In addition to his role as a director of resTORbio, Mr, Silverstein was a partner in OrbiMed, a healthcare investment firm that held an equity position in Adicet.

13.  Defendant Jeffrey A. Chodakewitz is a director of the Company.

14.  Defendant Paul Fonteyne is a director of the Company.

15.  Defendant Michael Grissinger is a director of the Company.

16.  Defendant David Steinberg is a director of the Company.

17.  Defendant Lynne Sullivan is a director of the Company.

**FACTS**

18.     resTORbio is a clinical-stage biopharmaceutical company developing medicines that target the biology of aging to prevent or treat age-related diseases with the potential to extend healthy lifespan. resTORbio's lead program selectively inhibits the target of rapamycin complex 1, or TORC1, an evolutionarily conserved pathway that contributes to the age-related decline in function of multiple organ systems. resTORbio's lead product candidate, RTB101, is an oral, selective, and potent inhibitor of TORC1. RTB101 inhibits the phosphorylation of multiple targets downstream of TORC1. Inhibition of TORC1 has been observed to extend lifespan and healthspan in aging preclinical species and to enhance immune, neurologic and cardiac functions, suggesting potential benefits in several aging-related diseases.

19.     Adicet is a biotechnology company that is advancing a new generation of chimeric antigen receptor (CAR)-modified-T cell therapies in oncology and other indications. Adicet's approach is based on gamma delta T cells, an immune cell population that Adicet believes has potentially significant advantages over alpha beta T cells, which are the basis of standard CAR-T cell therapies. Adicet believes that it is at the forefront to take tumor targeting gamma delta CAR-T cell product candidates into IND-enabling studies and clinical trials for specific tumor types. Adicet is developing proprietary processes for engineering and manufacturing product candidates based on gamma delta T cells from the blood of healthy donors, resulting in high yields of cells with efficacious tumor-killing activity in preclinical experiments.

20.     Project Oasis Merger Sub, Inc. is a wholly owned subsidiary of resTORbio, and was formed solely for the purposes of carrying out the merger.

21.     On April 28, 2020, TORC's Board caused the Company to enter into the Merger Agreement.

22.     The Merger Agreement provides that Adicet will merge with and into Merger Sub, with Adicet surviving as a wholly-owned subsidiary of resTORbio; and (ii) each share of Adicet capital stock will be converted into 0.8559 shares of resTORbio common stock.

23.     At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> each share of [Adicent] Capital Stock outstanding immediately prior to the Effective Time (excluding shares to be canceled pursuant to Section 2.5(a)(i) and excluding Dissenting Shares) shall be automatically converted solely into the right to receive a number of shares of [TORC] Common Stock equal to the Exchange Ratio (the "**Merger Consideration**").

24.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's unitholders will receive in connection with the Proposed Transaction.

25.     It is therefore imperative that the Company shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

26.     Section 5.4 of the Merger Agreement has a "no solicitation" clause that prevents TORC from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> 5.4 No Solicitation.
>
> (a) Each of Oasis and the Company agrees that, during the Pre-Closing Period, neither it nor any of its Subsidiaries shall, nor shall it or any of its Subsidiaries authorize any of its Representatives to, directly or indirectly: (i) solicit, initiate or knowingly encourage, induce or facilitate the communication, making, submission or announcement of any Acquisition Proposal or Acquisition Inquiry or take any action that could reasonably be expected to lead to an Acquisition Proposal or Acquisition Inquiry, (ii) furnish any non-public information regarding such Party to any Person in connection with or in response to an Acquisition Proposal or Acquisition Inquiry, (iii) engage in discussions or negotiations with any Person with respect to any Acquisition Proposal or Acquisition Inquiry, (iv) approve, endorse or recommend

any Acquisition Proposal (subject to Section 6.2 and Section 6.3), (v) execute or enter into any letter of intent or any Contract contemplating or otherwise relating to any Acquisition Transaction, (vi) take any action that could reasonably be expected to lead to an Acquisition Proposal or Acquisition Inquiry or (vii) publicly propose to do any of the foregoing; provided, however, that, notwithstanding anything contained in this Section 5.4 and subject to compliance with this Section 5.4, prior to the approval of this Agreement by a Party's stockholders(i.e., the Required Company Stockholder Vote, in the case of the Company and its Subsidiaries, or the Required Oasis Stockholder Vote in the case of Oasis), such Party may furnish non-public information regarding such Party and its Subsidiaries to, and enter into discussions or negotiations with, any Person in response to a bona fide written Acquisition Proposal by such Person which such Party's board of directors determines in good faith, after consultation with such Party's financial advisors and outside legal counsel, constitutes, or is reasonably likely to result in, a Superior Offer (and is not withdrawn) if: (A) neither such Party nor any Representative of such Party shall have breached this Section 5.4 in any material respect, (B) the board of directors of such Party concludes in good faith based on the advice of outside legal counsel, that the failure to take such action would reasonably be expected to be inconsistent with the board of directors' fiduciary duties under applicable Law, (C) at least two (2) Business Days prior to initially furnishing any such nonpublic information to, or entering into discussions with, such Person, such Party gives the other Party written notice of the identity of such Person and of such Party's intention to furnish nonpublic information to, or enter into discussions with, such Person, (D) such Party receives from such Person an executed Acceptable Confidentiality Agreement and (E) at least two (2) Business Days prior to furnishing any such nonpublic information to such Person, such Party furnishes such nonpublic information to the other Party (to the extent such information has not been previously furnished by such Party to the other Party). Without limiting the generality of the foregoing, each Party acknowledges and agrees that, in the event any Representative of such Party takes any action that, if taken by such Party, would constitute a breach of this Section 5.4 by such Party, the taking of such action by such Representative shall be deemed to constitute a breach of this Section 5.4 by such Party for purposes of this Agreement.

27.     In addition, Section 10.3 of the Merger Agreement requires TORC to pay up to a $6,100,000 "termination fee" in the event this agreement is terminated by TORC and improperly constrains the Company from obtaining a superior offer.  Such a termination fee is excessive and unduly restrictive to TORC's ability to consider other offers.

28.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

29.     As alleged herein, the Registration Statement omits material information with

respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

30.    First, the Registration Statement omits entirely TORC's, Adicet's, and the pro forma combined company's financial projections.

31.    The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisor rendered in support of any fairness opinion.

32.    Second, the Registration Statement omits material information, including whether JMP Securities LLC ("JMP"), the financial advisor for TORC, performed certain analyses in connection with the Proposed Transaction.

33.    Most critically, the Registration Statement is missing all financial projections for TORC and is devoid of all of JMP's financial analyses concerning TORC, rendering the Registration Statement materially incomplete and misleading.

34.    As noted in the Registration Statement, "[t]he resTORbio Board approved the liquidation plan for use by JMP in conducting its financial analyses of resTORbio," however, none of these analyses are included in the Registration Statement.

35.    Nowhere does the Registration Statement provide a discounted cash flow analysis for TORC or similar analysis.

36.    As such, resTORbio stockholders are made to believe that the Company had no value other than its liquidation value despite not providing resTORbio stockholders with any projections or analyses. Stockholders are entitled to this information as a matter of law, when asked to vote on a merger.

37.     With regard to the financial analyses JMP performed on Adicet, the Adicet *Selected Company Analysis*, fails to include: (i) JMP's bases for selecting each of the companies observed; and (ii) the individual metrics for each company observed. This information must be disclosed to make the Registration Statement not materially misleading to TORC stockholders and provide stockholders with full and relevant information in considering how to vote.

38.     With respect to the Adicet *Selected Initial Public Offerings Analysis*, the Registration Statement fails to include: (i) JMP's assumptions for selecting each of the companies observed; and (ii) the individual metrics for each company observed. This information must be disclosed to make the Registration Statement not materially misleading to TORC stockholders and provide stockholders with full and relevant information in considering how to vote.

39.     With respect to the Adicet *Precedent Transaction Analysis*, the Registration Statement fails to disclose: (i) JMP's assumptions for selecting each of the transactions observed; and (ii) the inputs for each of the transactions observed. This information must be disclosed to make the Registration Statement not materially misleading to TORC stockholders and provide stockholders with full and relevant information in considering how to vote.

40.     Third, the Registration Statement omits material information regarding the engagement of JMP.

41.     The Registration Statement Provides:

The resTORbio Board selected JMP as its financial advisor because it is an internationally recognized investment banking firm that has substantial experience in transactions similar to the merger. Pursuant to a letter agreement dated February 7, 2020, resTORbio engaged JMP to act as its financial advisor in connection with the contemplated transaction. The engagement letter between resTORbio and JMP provides for a transaction fee that is estimated, based on the information available as of the date of the announcement, at approximately $1,250,000, $250,000 of which became payable upon the rendering of the opinion, and the remainder of which is contingent upon the completion of the merger. In addition, resTORbio has agreed to

reimburse JMP for certain of its expenses, including attorneys' fees and disbursements, and to indemnify JMP against certain claims and liabilities arising out of JMP's engagement.

Registration Statement at 183.

42.     The Registration Statement fails to disclose the exact amount of reimbursement to JMP for certain of its expenses, including attorneys' fees and disbursements, and to indemnify JMP against certain claims and liabilities arising out of JMP's engagement.

43.     Full disclosure of investment banker compensation and all potential conflicts is material information unitholders of TORC are entitled to receive in deciding what weight to place on the opinions and roles played by the investment banks in the Proposed Transaction.

44.     The omission of the above-referenced material information renders the Registration Statement false and misleading.

45.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**CLAIMS FOR RELIEF**

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the

9

statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48.     Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

49.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

50.     The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement.  Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

51.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at

issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

56.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in

it or necessary to make the statements contained therein not misleading;

      D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

      E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 19, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*

13